**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**CARLOS BAYRON-RAMOS**<br><br>Defendant. | Crim. No. 25-244 (PAD) |

**REPORT AND RECOMMENDATION**

On May 22, 2025, Defendant Carlos Ariel Bayron-Ramos was charged with violations of 18 U.S.C. §§ 922(o), 922(g)(1). Docket No. 1. Defendant filed a motion to suppress at Docket No. 33. The Government opposed at Docket No. 45. The matter was referred to me for a hearing and Report and Recommendation. Docket No. 34. An evidentiary hearing was held on January 15, 2026. Docket Nos. 48, 54. The Government presented the testimonies of Puerto Rico Police Bureau (PRPB) officers Angel Joel Quintana-López and David J. Álvarez-Burgos. Documentary evidence was admitted. See Docket No. 49. Post-hearing briefs were received. Docket Nos. 56, 59. After carefully considering the evidence and arguments, the undersigned recommends that Defendant's motion to suppress be **GRANTED**.

**I.      Factual Background**

The following account is drawn from the credible evidence received at the evidentiary hearing.

On March 18, 2025, Agent Quintana-López of the PRPB San Juan Intelligence Division was performing an investigation in an area previously identified as one of high criminal incidence near the Puerta de Tierra II Housing Project. Transcript of the January 15, 2026, Evidentiary Hearing at Docket No. 54 ("Tr") at 3-4. At around 6:30 p.m., Quintana-López observed a white vehicle with three individuals leaving the housing project. Id. at 5 ¶¶ 7-10. He observed that none of the individuals in the car were wearing seat belts. Id. at 5 ¶¶ 22-23. He contacted Agent Álvarez-Burgos, who was driving a marked patrol car, and asked him to stop the white vehicle. Id. at 6 ¶¶

**United States of America v. Bayron-Ramos**
**Criminal No. 25-244 (PAD)**
**Report and Recommendation**

9-12. When Quintana-López saw that the other PRPB agents had stopped the vehicle, he got out of his unmarked car to approach the vehicle that was being intervened by the other PRPB agents. Id. at 7 ¶¶ 10-22. Quintana-López observed the three individuals he had previously identified and, when he approached the passenger's side, he observed a little transparent bag with several rounds protruding outwards underneath the seat in the rear right passenger's side of the vehicle. Id. at 8 ¶¶ 1-7, 12-13. Defendant was the person sitting on that side of the car. Id. at 8 ¶¶ 16-18. Quintana-López then signaled the other officers and told Defendant to dismount the vehicle as he was under arrest. Id. at 9 ¶¶ 1-2. Once outside the vehicle, Quintana-López verbally advised all three individuals of their rights under Miranda. Id. at 9 ¶¶ 5-10, 23-25; 10 ¶¶ 1-2. He then proceeded to place the individuals, including Defendant, under arrest. Id. at 10 ¶¶ 5-8. At the time of their arrest, none of the individuals made any verbal requests under Miranda. Id. at 10 ¶¶ 13-18.

Agents of the Bureau of Alcohol, Tobacco, Firearm and Explosives (ATF) and the United States Probation Office arrived at the place of intervention and searched the vehicle in question that same day. Id. at 11 ¶¶ 9-14. Several firearms and rounds of ammunition were seized from the vehicle. Id. at 11 ¶¶ 18-19. After conclusion of the search, the individuals, including Defendant, were transported to the offices of ATF. Id. at 11 ¶¶ 18-21. Once at the offices of ATF, Quintana-López went to the cell block and proceeded to read to Defendant the Miranda warnings, this time using the PRPB Miranda form. Id. at 12 ¶¶ 3-12. He explained each one of the Miranda rights and gave Defendant the form for signature. Id. The PRPB Miranda form signed by Defendant was admitted into evidence as Joint Exhibit 1. Docket No. 49.

The PRPB Miranda form at Joint Exhibit 1 is titled Miranda Warnings for Suspects in Custody (Anytime Before Being Questioned). In the section titled Warnings, the form states the following:

> You have the right to remain silent and refuse to answer any questions.
>
> Anything you say may be used against you in a court of law.
>
> You have the right to consult with an attorney before speaking to a member of the Police and the right to have an attorney present during your questioning now or in the future.
>
> If you cannot afford to hire an attorney and want one, the state will provide one before any questioning.

**United States of America v. Bayron-Ramos**
**Criminal No. 25-244 (PAD)**
**Report and Recommendation**

> If you decide to answer now without the presence of an attorney, you will still have the right to stop the answering until you speak to an attorney.
>
> Knowing and understanding these rights after having explained them to you, do you wish to answer the questions without the presence of an attorney?

In the section titled Suspect's Statement on Their Consent to Interrogation, the form provides instructions to mark with an "x" the appropriate box:

> [   ] **I exercised**/ [   ] **I did not exercise** my right to read [the rights] myself.
>
> [   ] I understand the rights granted to me by such warnings and **I waive them voluntarily** fully aware that I can stop questioning and/or invoke my right to be assisted by an attorney at any time. The waiver of these rights has been voluntary, without coercion, intimidation, violence, pressure, or any promises.
>
> [   ] I understand the rights that these warnings confer to me, and I have decided to **NOT waive** them. Joint Exhibit 1 (emphasis in the original).

The markings on the PRPB Miranda form were made by Quintana-López after reading the rights to Defendant and being informed by Defendant that he would not be waiving his rights. Tr. at 16 ¶¶ 1-10. Defendant chose to mark with an "x" that he had exercised his right to read the Miranda rights and that he had "decided to **NOT WAIVE**" the rights. Joint Exhibit 1. Defendant signed the form. Id. at 16 ¶¶ 3-12. PRPB agents also signed the form. Id. Even though the signed form does not have a recorded time, the same was signed by Defendant approximately three (3) hours (at about 9:30 p.m.) after arrival at the offices of ATF. Tr. at 14 ¶¶ 4-15; 31 ¶¶ 8-11. Defendant did not make any verbal requests under Miranda at that time. Id. at 14 ¶¶ 17-21. But according to Quintana-López, Defendant indicated that he was not going to waive his rights under Miranda. Id. at 16 ¶¶ 5-6; 27 ¶¶ 11-12. Quintana-López did not interview Defendant. Id. at 15 ¶¶ 1-6 ("No conversations came up with him."). Quintana-López communicated to ATF agents that Defendant had declined waiver of his Miranda rights. Id. at 31 ¶¶ 19-21; 32 ¶¶ 13-16. ATF agents interviewed

3

**United States of America v. Bayron-Ramos**
**Criminal No. 25-244 (PAD)**
**Report and Recommendation**

Defendant that same night. Joint Exhibit 2. At 9:43 p.m., Defendant signed the ATF form titled Affirmation of Rights with a waiver of his right to remain silent and to counsel. Id.

## II.    Discussion

The issue before me now is whether by marking the box in the PRPB Miranda form that stated that Defendant would "not waive" his rights under Miranda, Defendant is deemed to have invoked his right to be represented by counsel prior to interrogation. Defendant contends that by marking the box indicating that he did not waive his rights, he unequivocally invoked his right to counsel, thereby prohibiting any further interrogation by law enforcement. The Government would have the Court require more to be able to deem Defendant to have unequivocally asserted his right to counsel. This issue— specifically, as it relates to the PRPB Miranda form— has been before courts in this District on several occasions with mixed results. I nonetheless find that by filling out the PRPB Miranda form in the way done here (stating that Defendant would "not waive" his rights), Defendant quite clearly and effectively invoked his right to counsel, thereby deeming the subsequent interrogation by ATF agents contrary to law. Suppression of the incriminating statements made by Defendant during his interview with ATF is warranted.

Pursuant to the Fifth Amendment of the U.S. Constitution, no person "shall be compelled in any criminal case to be a witness against himself". U.S. CONST. amend. V. Premised on this constitutional right, in Miranda v. Arizona, 384 U.S. 436, 444 (1966), the U.S. Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." United States v. Lugo Guerrero, 2005 WL 8163207, at *6 (D.P.R., Oct. 14, 2005). The procedural safeguards under Miranda require that the suspect be adequately and effectively appraised of his rights, and that the exercise of those rights be honored by law enforcement. Missouri v. Seibert, 542 U.S. 600, 608 (2004). Therefore, the Fifth Amendment privilege against self-incrimination requires that, prior to questioning a suspect, the police appraise the suspect of his right to remain silent and to have counsel present during questioning, and of the state's intention to use his statements to secure a conviction. Moran v. Burbine, 475 U.S. 412, 420 (1986) (discussing Miranda v. Arizona, 384 U.S. at 468-470, 473-474). To be sure, Miranda not only requires that the suspect be informed of his rights but that police respect the suspect's decision to exercise any such rights and cease

4

questioning immediately upon the assertion of rights. Id.; Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

After a suspect has been appraised of his rights under the Fifth Amendment, law enforcement may proceed to interrogate the suspect only if he has not invoked his right to counsel or his right to remain silent. For a suspect to properly invoke his right to counsel, he must do so unambiguously and unequivocally. Davis v. United States, 512 U.S. 452, 458-459 (1994). The inquiry is an objective one— that a reasonable officer under the circumstances would understand the suspect's request as one for counsel. Id. But investigators are not required to treat every mention of a lawyer as an invocation of Miranda rights. Id. at 459. Unless the request for counsel is unambiguous or unequivocal, the officers have no obligation to stop questioning. Id. at 461-62. As such, that a suspect "might" want to have counsel present during the interview is an insufficient assertion of right to counsel. Id. at 462 (finding that "maybe I should talk to a lawyer" is not a clear invocation of right to counsel). Consistent with the foregoing, the First Circuit has expressed that if the suspect "does not unequivocally demand assistance, request a lawyer's presence, or otherwise clearly indicate an unwillingness to make a statement [without the] presence of counsel," the suspect has not made a clear invocation of his right to counsel under Miranda. United States. v. Oquendo-Rivas, 750 F.3d 12, 19 (1st Cir. 2014) ("I do not understand this, my lawyer speaks" insufficient to demand counsel). See also United States v. Carpentino, 948 F.3d 10, 24-25 (1st Cir. 2020) (a statement such as "I kinda need a phone call to my lawyer, too. I need to let somebody know that I'm here" is ambiguous as to its purpose and not an unequivocal request for attorney assistance during custodial interview). By like token, to invoke the right to remain silent, an accused must do so unambiguously. Berghuis v. Thompkins, 560 U.S. 370, 381 (2010). And merely remaining silent is insufficient. Id. at 382. Further, expressing not having anything to say— without an outright denial of the invitation to answer questions— may be interpreted as a protest of innocence rather than as an invocation of the right to remain silent. United States v. Simpkins, 978 F.3d 1, 12 (1st Cir. 2020).

Even though the invocation of both the rights to counsel and to remain silent must be unequivocal and unambiguous, the assertion of each right by a defendant carries a distinct legal consequence for law enforcement. When a suspect invokes his right to counsel, interrogation by law enforcement must stop until counsel is present. Edwards, 451 U.S. at 484-485. The only

United States of America v. Bayron-Ramos
Criminal No. 25-244 (PAD)
Report and Recommendation

exception to this rule is when the suspect "initiates further communication, exchanges, or conversations" with the police without coercion or probing. Id. But when a suspect invokes his right to remain silent, law enforcement is not automatically barred from resuming interrogation. United States v. Andrade, 135 F.3d 104, 107 (1st Cir. 1998); Oquendo-Rivas, 750 F.3d at 17. Interrogation may resume if the defendant's right to cut off questioning is "scrupulously honored." Michigan v. Mosley, 423 U.S. 96, 104 (1975). Here lies the crux of the issue in this case. Defendant maintains that when he signed the PRPB Miranda form he invoked his right to counsel and that ATF was barred from interrogation. Whereas the Government posits that when he signed the PRPB Miranda form Defendant only invoked his right to remain silent and ATF agents were allowed to interrogate Defendant because they complied with the Mosley factors.

The relevant facts are largely undisputed. Defendant was arrested at around 6:30 p.m. At the arrest, Defendant was given Miranda warnings. He remained silent but did not affirmatively request an attorney. Defendant was then transported to the offices of ATF and, about three (3) hours after the arrest, Defendant was presented with the PRPB Miranda form. Defendant was again advised of his rights and caused Quintana-López to mark the "not waive" option of the form. Defendant did not verbally request counsel, but he did remain silent. Quintana-López understood that Defendant had refused waiver of his rights, did not interview Defendant, and communicated to ATF agents that Defendant declined waiver of his Miranda rights. Less than twenty minutes later, ATF agents proceeded to again advise Defendant of his Miranda rights. This time obtaining a signed waiver by Defendant. ATF agents interviewed Defendant and obtained incriminating statements.

If Defendant is deemed to have invoked his right to counsel by checking the "not waived" box of the PRPB Miranda form, ATF agents were barred from interrogating him, and any statements obtained must be suppressed. The Government argues that no such invocation occurred because by marking the "not waive" portion of the form Defendant merely indicated that he was not waiving his rights but did not unequivocally communicate that he was invoking his right to counsel. Docket No. 56 at p. 8. The Government relies on Davis and Thompkins to argue that an invocation of the right to counsel or the right to remain silent must be clear, unambiguous, and unequivocal to be deemed effective. The Government also relies on United States of America v. Dávila-Rosa, Crim. No. 15-214 (Report and Recommendation, Oct. 29, 2015) (*neither adopted*

6

**United States of America v. Bayron-Ramos**
**Criminal No. 25-244 (PAD)**
**Report and Recommendation**

*nor rejected*)) and United States of America v. Castro-Santiago, 2020 WL 1042039 (D.P.R., Feb. 28, 2020), to sustain that by checking the "not waive" portion of the PRPB Miranda form, no such unequivocal invocation of the right to counsel was achieved. In turn, the Defendant points to the decisions in United States of America v. Soler-Muñiz, Crim. No. 19-247 (Report and Recommendation, Mar. 20, 2020 (*neither adopted nor rejected*)), United States of America v. Fernández-Santos, 716 F.Supp.3d 8 (D.P.R., Feb. 8, 2024), and United States of America v. Ortiz-Ortiz, 2024 WL 621305 (D.P.R., Feb. 14, 2024), for the opposite conclusion. At issue in all of these cases has been the same PRPB Miranda form and whether by marking the section of the form that states "I understand the rights that these warnings confer to me, and I have decided to **NOT waive** them" a defendant is deemed to have unequivocally invoked his right to counsel.

Indeed, in both Dávila-Rosa and Castro-Santiago the Court decided that marking the statement in the PRPB Miranda form rejecting waiver of rights under Miranda was an insufficient invocation of the right to counsel as it was not an affirmative request for counsel (Dávila-Rosa, Crim. No. 15-214, Docket No. 26 at p. 13) or did not amount to a statement as to legal representation (Castro-Santiago, 2020 WL 1042039 at * 5). See also United States of America v. Cabassa-Maldonado, Crim. No. 16-027 (Report and Recommendation, Feb. 24, 2017 (*adopted without objections* on May 4, 2017) (same). Nonetheless, more recent cases have taken a different view of the same form which I find persuasive because there is no statutory authority for the conclusion that invocation of the right to counsel requires the use of a particular format or wording, that a defendant must invoke his right to counsel separately from his right to remain silent, or that a defendant must make a verbal assertion of the right to counsel. The established rule is merely that a reasonable officer in the circumstances understands that the defendant does not wish to speak without the presence of counsel. And, critically, the Government should not be allowed to use the shortcomings of a form drafted and provided by law enforcement for the purpose of allowing a defendant to invoke or waive his rights to sidestep a defendant's protections under the Fifth Amendment.

In Soler-Muñiz, which was a case with identical facts as those here (defendant was first presented with the PRPB Miranda form and subsequently with an ATF form) the Court held that "[t]he fact that [the defendant's] statement took the form of a negative assertion as opposed to an affirmative declaration— a desire to 'not waive' rights— does not mean that a reasonable officer

under the circumstances would have doubts as to [his] intentions." Crim. No. 19-247, Docket No. 59 at 6. The Court distinguished the facts in that case, where defendant remained silent after marking the "not waive" portion of the PRPB Miranda form, with other cases in the First Circuit where a defendant's invocation of his right to counsel had been marred by ambiguity. Id. at 7. The Court then held that the defendant's communication to officers when marking the "not waive" portion of the form was "simple, clear, and direct." Id. The Court went on to state: "He was informed he had the right to consult and have counsel present with him during questioning. He unambiguously indicated that he wished not to waive his rights. And he remained silent. A reasonable officer under the circumstances would understand that [the defendant] wished to exercise his right to counsel." Id. (recommending suppression of statements made to ATF after defendant signed a waiver of rights in the ATF form subsequent to refusing waiver in the PRPB Miranda form). And while the Court acknowledged that defendant's invocation would have been clearer had he answered "no" to the question asking whether "[k]nowing and understanding these rights after having explained them to you, do you wish to answer the questions without the presence of an attorney?," it nevertheless held that Defendant's selection of the "not waive" portion of the form constituted a sufficiently clear invocation of his rights, as the law does not require perfection in asserting this constitutional protection. Id. at 8.

The Court's decision in Fernández-Santos provides further authority for finding that marking the "not waive" statement in the PRPB Miranda form constitutes an invocation of the right to counsel. The facts in Fernández-Santos were slightly different from those here because the defendant in that case signed the PRPB Miranda form during his interview with agents of the Homeland Security Investigations (HIS). 2023 WL 8915838 (Report and Recommendation, Dec. 27, 2023 (adopted in part and rejected in part in United States v. Fernández-Santos, 716 F.Supp.3d 8 (D.P.R., Feb. 8, 2024)). The Magistrate Judge partially accepted the Government's argument that the defendant was presented with the PRPB Miranda form "to document the verbal Miranda warnings" PRPB agent had given the defendant at the arrest. Id. at 17-19. And concluded that even though the defendant had marked the "not waive" statement in the PRPB Miranda form, because he had in the same interview indicated that that he was waiving his Miranda rights by signing the HSI form and continued to speak to HSI agents without asking for counsel, a reasonable law enforcement officer would not have unequivocally understood defendant's actions to be a request

United States of America v. Bayron-Ramos
Criminal No. 25-244 (PAD)
Report and Recommendation

for counsel. Id. at 18-19. The presiding District Judge adopted a broader approach to the rejection of the waiver made by the defendant in signing the PRPB Miranda form and rejected the conclusion that the two conflicting forms meant that defendant had waived his right to counsel. The Court in Fernández-Santos also implicitly rejected the Government's argument that the PRPB Miranda form was meant to merely document prior Miranda warnings. Instead, the Court found that, by marking the "not waive" box in the PRPB Miranda form prior to signing the waiver with HSI, a reasonable officer would have been on notice of defendant's request for the assistance of counsel. Fernández-Santos, 716 F.Supp.3d at 20.

In Ortiz-Ortiz the Court again considered whether by marking the "not waive" statement of the PRPB Miranda form a defendant is deemed to have invoked his right to counsel. The defendant in Ortiz-Ortiz initially signed a form and marked his intention to waive his rights but, before proceeding with the interview, asked for another form and marked the "not waive" box. The defendant then remained silent. United States of America v. Ortiz-Ortiz, Crim. No. 21-192 (Report and Recommendation, Jan. 23, 2024 (adopted in United States of America v. Ortiz-Ortiz, 2024 WL 621305 (D.P.R., Feb. 21, 2024)). In adopting the recommendation of the Magistrate Judge, the presiding District Judge expressed that "[g]iven the layout of the form, 'those warnings' refer to the Miranda warnings and includes the right to counsel". Id. at 5. The Court acknowledged the conflicting decisions in Dávila-Rosa and Castro-Santiago and nonetheless decided that marking the "not waive" statement of the PRPB Miranda form was a sufficient invocation of the right to counsel. Id. at 6.

This issue was also recently discussed by the Court in United States of America v. Payne-Pabón, 2025 WL 1442817 (D.P.R., May 19, 2025). The defendant in that case marked both the waiver and non-waiver boxes in the PRPB Miranda form and proceeded to give the interview to agents. Id. at 3. Logically, the Court in Payne-Pabón concluded that there being inconsistent statements in one same form, there could not have been a clear invocation of the right to counsel. Id. at 7-9. But note that the Court in Payne-Pabón did not cite to Dávila-Rosa and Castro-Santiago in support of her determination and assumed without deciding that a defendant could potentially invoke his right to counsel by marking the "not waive" section of the PRPB Miranda form. Id. at 6. Most recently, in United States of America v. Lugo Vélez, Crim. No. 25-338 (D.P.R., May 8,

9

United States of America v. Bayron-Ramos
Criminal No. 25-244 (PAD)
Report and Recommendation

2026),[1] the Court again considered the language of the PRPB Miranda form, and the significance of a defendant having marked the "not waive" portion of the form once advised of the rights under Miranda. See Crim. No. 25-338, Docket No. 18-2 (PRPB Miranda form, marked in the same fashion as Defendant did here). The Court cited Fernández-Santos, 716 F.Supp.3d at 20 and Ortiz-Ortiz, 2024 WL 621305, at *4-6, for the proposition that a defendant can invoke Fifth Amendment rights to counsel and to remain silent through the PRPB Miranda form, and concluded that the defendant had invoked both rights by marking the "not waive" box in the form and that, consequently, law enforcement was precluded from further interrogation, which was not limited to verbal interactions and included actions intended to elicit incriminating responses. Lugo Vélez, Crim. No. 25-338, Docket No. 62 at pp. 17-19 and n. 5. The Court then ordered the suppression of defendant's incriminating statements, finding that they were obtained in violation of defendant's right to counsel and that law enforcement had not "scrupulously honored" the defendant's right to remain silent. Id. at pp. 15-21.

Even though there is no clearly on-point decision by the First Circuit, the cases of the Fourth Circuit in United States of America v. Johnson, 400 F.3d 187 (4th Cir. 2005), and the Sixth Circuit in United States of America v. Scott, 693 F.3d 715 (6th Cir. 2012), are instructive. The form at issue in Johnson asked: "Do you want to make a statement at this time without a lawyer?" The defendant in Johnson answered "no." 400 F.3d at 191. The Fourth Circuit categorically rejected the premise that, because the question posed to the defendant included both the right to counsel and the right to remain silent, a clear invocation of the right to counsel was not made. Id. at 195. The Fourth Circuit held that the defendant had unequivocally invoked his right to counsel and refused to fault the defendant for any ambiguity in the form that was drafted and provided to the defendant by law enforcement. Id. at 196. Similarly, the form in Scott lumped both rights to counsel and to remain silent in the same question. It asked the defendant: "Having these rights in mind, do you wish to talk to us now?" 693 F.3d at 717. And the defendant in Scott answered "no." Id. Like in Johnson, the Sixth Circuit in Scott held that the negative response of the defendant responded to a request for waiver of both rights. Id. at 719. Like in the PRPB Miranda form at issue here, as expressed by the Sixth Circuit in Scott, "[b]y requesting a response that bears 'these rights in mind,' the form elicited a response about [the defendant's] desire to speak with police

_____

[1]       See Docket No. 62.

'now' despite his right to counsel." Id. As such, the question posed to the defendant in Scott, like the "not waive" statement in the PRPB Miranda form, referred to "all of the rights, including the right to counsel, enumerated on the form immediately preceding the question." Id. at 720. The decisions in Fernández-Santos and Ortiz-Ortiz relied in Johnson and Scott to conclude that, by marking the "not waive" box of the PRPB Miranda form and remaining silent, a reasonable law enforcement agent would have had notice that the defendant had invoked his right to counsel. See Fernández-Santos, 716 F.Supp.3d at 19-20; Ortiz-Ortiz, 2024 WL 6211305 at *5; see also Soler-Muñiz, Crim. No. 19-247, Docket No. 59 at 9.

The PRPB Miranda form that was read to Defendant in this case explicitly warned the Defendant of both rights under Miranda. As it pertains to the right to counsel, the form stated: "You have the right to consult with an attorney before speaking to a member of the Police and the right to have an attorney present during your questioning now or in the future." It also stated: "If you cannot afford to hire an attorney and want one, the state will provide one before any questioning." And "If you decide to answer now without the presence of an attorney, you will still have the right to stop the answering until you speak to an attorney." It is thus reasonable to conclude that one of the goals of the PRPB Miranda form given to Defendant for signature was to advise him of his right to counsel. With respect to waiver, the form provided Defendant two options: to waive or not to waive. So, this is not a form like the form used by ATF agents (Joint Exhibit 2) that simply guided Defendant to waive or not sign the form. Instead, it guided Defendant into making a choice. And the "not waive" option provided to Defendant explicitly referred to "the rights" explained in the warnings section of the form ("I understand the rights that **these warnings** confer to me, and I have decided to **NOT waive them**."). Joint Exhibit 1 (emphasis in the original and added). Consistent with the conclusion of the Court in Ortiz-Ortiz, the layout of the form provided to the Defendant here comfortably supports the conclusion that the reference to "these warnings," includes the right to counsel under Miranda. Ortiz-Ortiz, 2024 WL 6211305 at *5 ("Given the layout of the form, 'those warnings' refers to the Miranda warnings and includes the right to counsel"). Also, given that Defendant was presented with only two (2) options, by marking one of the options in the checkbox next to the "not waive" statement, Defendant necessarily rejected the other option— a waiver of his right to counsel. See Soler-Muñiz, Crim. No. 19-247, Docket No. 59 at 7.

The Government argues that Defendant was provided with a written PRPB Miranda form solely to memorialize prior Miranda warnings given at the arrest. Docket No. 45 at p. 8; Docket No. 56 at pp. 6-7. However, this argument is unpersuasive and not supported by the testimony presented at the hearing. Quintana-López did not testify that the form was administered merely to document prior Miranda warnings. On the contrary, he understood that Defendant had categorically chosen not to waive his Miranda rights at the station. Further, this argument was rejected by the Court in Fernández-Santos. See discussion *supra* at pp. 8-9. The Government also seeks for the Court to rely on the Defendant's waiver in the ATF form and his conduct during that interview to reject suppression. Docket No. 45 at p. 11. Yet, this argument completely misses the mark and ignores the well-established rule in Edwards, 451 U.S. at 484-485. Once the Defendant invoked his right to counsel, ATF was barred from pursuing a subsequent interrogation. Defendant's actions after his initial invocation, which were prompted by ATF, are irrelevant.

Significantly, the cases discussed above stand for the very logical and fair proposition that Defendant cannot be penalized for the wording or procedures employed by law enforcement. The Government's position is untenable. Law enforcement is tasked with administering the Miranda warnings to defendants. Law enforcement chose to present the Defendant with the PRPB Miranda form so that the Defendant could confirm that he was advised of his rights and could decide as to those rights. The Government fails to articulate what additional conduct would constitute an unequivocal invocation of right to counsel under these circumstances and instead appears to suggest that completion of the form alone was insufficient, thereby either requiring Defendant to write-in a specific request for counsel or make a verbal request counsel. See Docket No. 56 at pp. 3, 5 (arguing that checking that the not waive box is insufficient without explaining why). But the Government cites no authority to support the imposition of those more rigorous requirements, and it is the Government's burden to establish a defendant's waiver of Fifth Amendment rights. Having chosen to use a written form to secure a waiver decision, the Government should not be allowed to use any ambiguity in the form to its advantage. And Defendant should not be expected to go beyond what was required by law enforcement in the first place, especially when one considers that the obvious purpose of the form is to advise defendants of both rights. I echo the Court's conclusion in Fernández-Santos in rejecting the Government's position: "Finally, it is important to state that the considerable confusion in this case was created by the Government. It was PRPD

officers that provided Miranda waiver forms with unclear language and provided the defendant multiple waiver forms to sign at the same time. This Court cannot interpret an ambiguity caused by the Government to be a waiver of a right that is indispensable to the protection of the Fifth Amendment privilege. To deem Fernandez's statements admissible because of this confusion would encourage law enforcement officers to give defendants multiple Miranda waivers to sign at a time in the hopes that one or more of the forms would contradict the others." Fernández-Santos, 716 F.Supp.3d at 20 (internal quotations and citations omitted).

At bottom, courts must "presume that a defendant did not waive his rights[.]" North Carolina v. Butler, 441 U.S. 369, 375 (1979); Fernández-Santos, 716 F.Supp.3d at 19 (courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights.") (citation omitted). Consistent with this principle, courts apply an objective standard in determining whether a suspect invoked the right to counsel, namely whether a reasonable law enforcement officer under the circumstances would have understood the defendant's statement as a request for counsel. Oquendo-Rivas, 750 F.3d at 19. By refusing to waive his rights and remaining silent after signing the PRPB Miranda form, Defendant invoked his rights to counsel and to remain silent. Just like in Soler-Muñiz, the Defendant communicated in a "simple, clear, and direct" manner that he would not speak without counsel. Crim. No. 19-247, Docket No. 59 at p. 7. There was no uncertainty or reluctance in that expression. And that is precisely what Quintana-López understood. The contemporaneous understanding by Quintana-López is strong, if not the most persuasive, evidence of what a reasonable officer would have understood under the circumstances. See Id. at 8. ("Indeed, the fact that PRPD officers immediately ended the encounter upon learning that Soler chose not to waive his rights suggests that they understood he had invoked them."); Ortiz-Ortiz, 2024 WL 6211305 at *5 (PRPD officers "independently understood" questioning had to end once defendant checked the box on PRPD form).

### III.    Conclusion

Because I find that Defendant invoked his right to counsel by declining to waive his rights on the PRPB Miranda form, ATF agents were barred from initiating interrogation without the presence of counsel. Any incriminating statements obtained during Defendant's interrogation by ATF were elicited in violation of Defendant's Fifth Amendment rights and should be suppressed and I see no need to evaluate the factors under Mosley.

United States of America v. Bayron-Ramos
Criminal No. 25-244 (PAD)
Report and Recommendation

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections may be deemed waived by the District Court and claims not preserved by objections may be precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Henley Drilling Co. v. McGee, 36 F.3d 143, 150 (1st Cir. 1994).

In San Juan, Puerto Rico, this 13th day of May 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

14